

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.     Case No. 09-CR-196

SHAMIKA EVANS,

    Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Melvin K. Washington and Joseph R. Wall, Assistant United States Attorneys, and the defendant, Shamika Evans, individually and by attorney Susan L. Karaskiewicz, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in two counts of a two-count Indictment, which alleges violations of Title 18, United States Code, Section 1591. In connection with this plea agreement, the defendant has also been charged in an Information, which alleges a violation of Title 18, United States Code, Section 371.

3. The defendant has read and fully understands the charges contained in the Indictment and Information. She fully understands the nature and elements of the crimes with which she has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to a one-count Information charging as follows:

THE UNITED STATES ATTORNEY CHARGES:

COUNT ONE
(Conspiracy To Sex Traffic By Use Of Force)

1. Beginning in or about June 2004, and continuing through on or about July 31, 2009, in the State and Eastern District of Wisconsin and elsewhere,

SHAMIKA EVANS,
a/k/a "MIKA,"

did knowingly and intentionally conspire with others known and unknown to recruit, entice, harbor, transport, provide, and obtain by any means, in and affecting interstate commerce, minor and adult females, knowing that force, fraud, and coercion would be used to cause the females to engage in commercial sex acts, in violation of Title 18, United States Code, § 1591.

Acts In Furtherance Of The Conspiracy

In furtherance of the conspiracy, EVANS committed and caused to be committed various acts within the Eastern District of Wisconsin and elsewhere, including but not limited to the following:

2. In June 2004, at the direction of co-conspirator DERRICK AVERY, EVANS instructed prostituted female # 7 in the rules of AVERY'S prostitution business.

3. In August 2004, at the direction of co-conspirator DERRICK AVERY, EVANS encouraged prostituted child B to travel to Las Vegas, Nevada to work for co-conspirator AVERY as a prostitute.

2

4. In approximately fall 2007, at the direction of co-conspirator DERRICK AVERY, EVANS questioned prostituted female # 10 about her past so as to determine her fitness to be a prostitute for AVERY.

5. In early June 2008, EVANS drove prostituted female # 10 to a man's house in order for her to have sex with the man as either payment for professional services he rendered to AVERY or so as to obtain prostitution funds for AVERY.

All in violation of Title 18 United States Code, Section 371.

6. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

### Count One

*Shamika EVANS met Derrick AVERY in 1999 during the filming of the HBO video, "Pimp Snooky," about AVERY's day-to-day life as a pimp. Parts of the program showed AVERY's other prostitutes "programming" EVANS to be a prostitute for AVERY.*

*EVANS reconnected with AVERY in 2001 and soon after began prostituting for him, mostly traveling to Chicago for prostitution "dates." When AVERY's federal probation ended in 2003 she and other prostitutes in his "stable" traveled with him to Las Vegas for the purpose of doing prostitution dates.*

*Sometime after 2001 but in no event later than June 2004, EVANS began assisting AVERY in his prostitution business by, among other things, training women to be AVERY's prostitutes. The training including "debriefing" (obtaining all relevant background information about the female's life) and "programming" (teaching the potential new prostitute AVERY's rules) AVERY's new prostitutes.*

*In June 2004, at AVERY's direction, EVANS trained prostituted female # 7 in the "rules" of AVERY's business and that woman became one of AVERY's prostitutes. Also at this time, EVANS*

3

*began supervising a minor prostitute of AVERY's while she and the minor were in Chicago performing prostitution "dates" for the financial benefit of AVERY.*

*In early 2005, EVANS helped train prostituted female # 8 in the rules of AVERY's prostitution business. This woman eventually joined AVERY's stable of prostitutes in Las Vegas.*

*In approximately fall 2007, at the direction of co-conspirator DERRICK AVERY, EVANS questioned prostituted female # 10 about her past so as to determine her fitness to be a prostitute for AVERY. In early June 2008, EVANS drove prostituted female # 10 to a man's house in order for her to have sex with the man as either payment for professional services he rendered to AVERY or so as to obtain prostitution funds for AVERY.*

*At all times, EVANS knew that AVERY used force and physical violence against his prostitutes so as to encourage them to follow his rules and make as much money as possible for him through prostitution and other illegal activities.*

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum terms of imprisonment and fine: Five years imprisonment and a fine of $250,000. The count also carries a mandatory special assessment of $100.00, and a maximum of three years of supervised release

8. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## DISMISSAL OF INDICTMENT

9. The government agrees to move to dismiss the Indictment at the time of sentencing.

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge in the Information the government must prove each of the following propositions beyond a reasonable doubt:

<u>First</u>, That two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment;

Second: That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it; and

Third: That one of the conspirators, during the existence of the conspiracy, knowingly committed at least one of the "acts in furtherance of the conspiracy" as described in the indictment.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 5. The defendant acknowledges and agrees that her attorney in turn has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties

5

further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## SENTENCING GUIDELINE CALCULATIONS

15. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

### Base Offense Level

17. The parties agree that the applicable base offense level for the offense charged in Counts One and Two is **34** under Sentencing Guidelines § 2G1.3(a)(1) and § 2X1.1

6

### Specific Offense Characteristics

18. The parties understand that the government will recommend to the sentencing court that a two-level increase for "the commission of a sex act" under § 2G1.3(b)(4) of the Sentencing Guidelines is applicable to the offense level for the offense charged in Count One. The defendant is free to oppose that enhancement.

### Role in the Offense

19. The parties agree that a joint recommendation for a two-level decrease for "minor participant" is appropriate under § 3B1.2(b) of the Sentencing Guidelines.

### Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant not contacting potential witnesses in this case. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of her intention to enter a plea of guilty.

### SENTENCING RECOMMENDATIONS

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not

7

limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the term of incarceration; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

## COURT'S DETERMINATIONS AT SENTENCING

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

26. The defendant agrees that, during the period of any supervision (probation or supervised release) imposed by the court in this case, the defendant will provide the Financial Litigation Unit (FLU) of the United States Attorney's Office with completed financial forms which will be provided by FLU, and will provide any documentation required by those forms. The defendant will provide FLU with such completed financial forms with required documentation within the first two months of supervision, at six month intervals thereafter during supervision, and within the last six months of scheduled supervision.

## Fine

27. The defendant understands that the government will recommend to the sentencing court that no fine be imposed against the defendant.

## Special Assessment

28. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## DEFENDANT'S COOPERATION

29. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely at any subsequent trials or proceedings, in state or federal court, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from the applicable sentencing guideline range. A committee in the U.S. Attorney's Office determines whether or not the defendant

9

is entitled to the departure motion and the extent of any departure granted. The defendant understands that her attorney and the prosecutors assigned to her case will make submissions to the committee about the details and value of the defendant's cooperation. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

30. In entering this agreement, the defendant acknowledges and understands that in so doing she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

> a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.
>
> b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.
>
> c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not she was persuaded of defendant's guilt beyond a reasonable doubt.
>
> d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-

10

examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

31. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## FURTHER CIVIL OR ADMINISTRATIVE ACTION

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if she violates any term of this agreement at any time, violates any condition of her bond, engages in any further criminal activity prior to sentencing, contacts any potential witness, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

40. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 7/12/10

SHAMIKA EVANS
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 7/12/10

SUSAN L. KARASKIEWICZ
Attorney for Defendant

For the United States of America:

Date: 7/14/10

JAMES L. SANTELLE
United States Attorney

14

Case 2:09-cr-00196-LA   Filed 07/14/10   Page 14 of 15   Document 110

Date: 7/14/2010

MELVIN K. WASHINGTON
Assistant United States Attorney

Date: 7-14-10

JOSEPH R. WALL
Assistant United States Attorney

15